*[NOT FOR PUBLICATION]*

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:                                                          Case No. GL 15-00330-jtg

RUSSELL T. HAMMON,                                              Chapter 13

                    Debtor.                                     Hon. John T. Gregg

_____/

## OPINION REGARDING CONFIRMATION
## OF PROPOSED CHAPTER 13 PLAN

APPEARANCES:   Charles J. Schneider, CHARLES J. SCHNEIDER, P.C., for Russell T. Hammon.  Barbara P. Foley, the Chapter 13 Trustee. James W. Batchelor, TROTT & TROTT, P.C., for Wells Fargo Bank, N.A.

This matter comes before the court in connection with the Original Chapter 13 Plan, as amended [Dkt. Nos. 6, 17, 27] (the "Plan"), filed by Russell T. Hammon, the debtor in the above-captioned bankruptcy case (the "Debtor").  The court is called upon to determine whether a Chapter 13 plan is confirmable if it modifies the rights of a holder of a claim protected under section 1322(b)(2) by proposing to first satisfy administrative expenses, including the fees and expenses of a debtor's attorney.  On at least two separate occasions, this court has held in written opinions that nearly identical plans were not confirmable.  *See In re Rogers*, 500 B.R. 537 (Bankr. W.D. Mich. 2013) (Gregg, J.); *In re Beall*, No. 13-09232, slip op. (Bankr. W.D. Mich. Feb. 19, 2014) (Dales, J.).  Nonetheless, the Debtor seeks to revisit the issue in this bankruptcy case.  For the following reasons and consistent with its previous decisions, the court shall deny confirmation of the Plan.[1]

---

[1]     Because the same issue has been previously addressed by this court in written opinions, one of which was published, this court's decision is purposely abbreviated.

## JURISDICTION

The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

## BACKGROUND

On January 26, 2015, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code in order to protect his home from foreclosure.  As of the petition date, the Debtor was in arrears to Wells Fargo Bank, N.A. (the "Mortgagee"), the first priority residential mortgage holder, in the amount of approximately $15,000.  Concurrently with the filing of his petition, the Debtor filed his Plan, which has been amended several times.  The proposed Plan requires Barbara P. Foley, in her capacity as the Chapter 13 trustee (the "Trustee"), to provide a distribution for the fees and expenses of Debtor's counsel prior to distributions on account of any secured claims, including the secured claim of the Mortgagee.

The Trustee filed a timely objection to confirmation of the Plan [Dkt. No. 22].  In her objection and supplemental brief [Dkt. No. 32], the Trustee contends that the Plan is not confirmable because it provides that the fees and expenses of Debtor's counsel would be satisfied in full prior to any other claims, and only thereafter would any remaining funds to be used to satisfy the post-petition ongoing monthly obligations of the Debtor to the Mortgagee.  Because the funds on hand at confirmation would not be sufficient to satisfy both the ongoing monthly obligations to the Mortgagee and the fees and expenses of Debtor's counsel, the Trustee argues that the Plan, as proposed, would result in an improper modification of the Mortgagee's rights in violation of section 1322(b)(2).[2]

---

[2]   The Mortgagee also filed an objection to confirmation [Dkt. No. 26] in which it concurred with the Trustee and alleged that the Plan understates amounts for the ongoing monthly mortgage payment prepetition arrearage.  The court need not address the latter arguments in the context of this Opinion.

In his supplemental brief [Dkt. No. 33], the Debtor argues that the Plan should be confirmed because the fees and expenses of Debtor's counsel are entitled to priority as an administrative expense that must be paid prior to any other claim pursuant to section 1326(b)(1), including the claim of the Mortgagee. The Debtor contends that the proposed Plan does not result in an impermissible modification of the mortgage because section 1322(b)(5) provides that a plan may provide for the curing of any default.

On June 2, 2015, the court conducted an evidentiary hearing regarding confirmation of the Plan.[3] At the hearing, two witnesses testified. The Debtor testified that he gave his informed consent to the terms of the Plan.[4] (Hr'g Tr. June 2, 2015 at. p. 25.) He further stated that he filed his bankruptcy case primarily to cure arrears on his home mortgage, which requires payments on a monthly basis. (Hr'g Tr. June 2, 2015 at pp. 23-24.) The Debtor acknowledged that the home at issue is his primary residence subject to the Mortgagee's first priority mortgage lien. (Hr'g Tr. June 2, 2015 at p. 26.)

Ms. Lisa Nedzlek, an attorney employed by Charles J. Schneider, P.C., counsel for the Debtor, also testified.[5] She advised the court that the Debtor has made all pre-confirmation

---

[3]    At an initial hearing, the court expressed concern regarding a potential conflict of interest because the Debtor was proposing to pay his attorney instead of reducing the balance on his mortgage in order to "save his home," which was, according to the Debtor, the primary purpose of his bankruptcy filing. (Hr'g Tr. Apr. 21, 2015 at pp. 2-3; Hr'g Tr. June 2, 2015 at pp. 23-24.) The court adjourned the hearing in order to hear testimony from the Debtor to ensure that he had provided his informed consent to Debtor's counsel with respect to the priority of attorneys' fees set forth in the Plan. (Hr'g Tr. Apr. 21, 2015 at p. 5.) Thereafter, the Debtor filed a second supplemental brief [Dkt. No. 37] regarding LBR 3015(d)(1) and the court's inquiries at the initial hearing. In his second supplemental brief, the Debtor expressed displeasure that the court, allegedly on its own initiative, raised an argument regarding the improper modification of the Model Plan used in the Western District of Michigan. The Debtor's displeasure is misdirected, as he overlooks the fact that the Trustee (not the court) properly raised this argument. (Obj. at ¶ 4; Trustee Br. at pp. 1, 8-9.) At the evidentiary hearing, the court advised the parties that it was not considering the the Debtor's failure to adhere to the Model Plan used in this District as a basis to deny confirmation given the substantive nature of the legal issue involved. *See In re Rose*, 2015 WL 151221 (Bankr. W.D. Mich. Jan. 12, 2015).

[4]    The Debtor's testimony was credible, but somewhat rehearsed.

[5]    Although Ms. Nedzlek is inherently biased because she is an employee of Debtor's counsel, the court found Nedzlek to be credible and truthful.

payments to the Trustee as required by section 1326(a)(1).  (Hr'g Tr. June 2, 2015 at p. 7.) Importantly, Ms. Nedzlek stated that despite the Debtor's timely payments, the Trustee would not have sufficient funds upon confirmation to satisfy in full both the post-petition monthly mortgage obligations to the Mortgagee and the fees and expenses of Debtor's counsel.  (Hr'g Tr. June 2, 2015 at p. 10.)  She explained that the Mortgagee would not receive any funds from the Trustee's first distribution under the Plan.[6]  (Hr'g Tr. June 2, 2015 at p. 10.)  Instead, the Mortgagee would need to wait until the Trustee makes the second distribution, at which point the Mortgagee would receive only a partial payment for post-petition obligations under the mortgage.  (Hr'g Tr. June 2, 2015 at pp. 10-11.)  According to Ms. Nedzlek, the Mortgagee would not receive a full monthly payment until the Trustee makes a third distribution under the proposed Plan.  (Hr'g Tr. June 2, 2015 at p. 11.)  Ms. Nedzlek further testified that in the event the Plan provided payment in full to the Mortgagee upon confirmation as opposed to the Debtor's counsel for accrued fees and expenses, counsel for the Debtor would not receive an initial distribution from the Trustee until September 2015, after which distributions would continue to be made by the Trustee until payment is made in full in July 2016.  (Hr'g Tr. June 2, 2015 at pp. 11, 15.)

The Trustee conducted an effective cross examination during which Ms. Nedzlek admitted, among other things, that the proposed payment by the Debtor into the Plan exceeds the monthly mortgage obligation by $341.62 after deducting the Trustee's commission of 6.5 percent.  (Hr'g Tr. June 2, 2015 at pp. 17-18.)  As such, the Trustee would be able to partially satisfy the fees and expenses of Debtor's counsel on an ongoing basis in the event that the Plan was amended to provide for a distribution to the Mortgagee ahead of counsel for the Debtor.  (Hr'g Tr. June 2, 2015 at pp. 16-19, 43.)

---

[6]     Both Chapter 13 trustees in this District make distributions on a monthly basis.

At the conclusion of the evidentiary hearing, the court took the matter under advisement. After carefully considering the legal arguments and the factual record, the court shall deny confirmation of the Plan without prejudice.

## DISCUSSION

This case involves the intersection of the "anti-modification" provision of section 1322(b)(2), the "cure and maintain" provision of section 1322(b)(5), and the priority status granted to administrative expenses under section 1326(b)(1). Section 1322(b)(2) provides that a chapter 13 plan may modify the rights of secured creditors, "other than a claim secured only by a security interest in real property that is the debtor's principal residence." Section 1322(b)(5) provides that notwithstanding section 1322(b)(2), a plan may:

> provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

11 U.S.C. § 1322(b)(5). Finally, section 1326(b)(1) provides that allowed administrative expenses, including those for attorney's fees and expenses under section 507(a)(2), shall be paid "before or at the time of each payment to creditors under the plan." 11 U.S.C. § 1326(b)(1); *see* 11 U.S.C. §§ 330(a), 503(b) and 507(a)(2).

As noted above, this court has previously considered this issue. *See supra* at p. 1. In *Rogers*, a decision by Judge James Gregg, the court first noted that the law is clear - mortgages protected by section 1322(b)(2) cannot be modified in any way; rather, "the monthly payments, the interest rate and the amortization must remain constant." *In re Rogers*, 500 B.R.at 540 (citing *Nobleman v. American Sav. Bank*, 508 U.S. 324, 331-32 (1993)). Because protected mortgages cannot be modified, the court recognized that a conflict arguably arises between section 1326(b)(1) and section 1322(b)(2) when a trustee does not have sufficient funds on hand to satisfy, in full, the

obligations to the mortgagee and the holder of an administrative expense, such as an attorney for a debtor. *Id*. at 546. Based on principles of statutory construction, the court found reconciliation of the sections to be a relatively straightforward exercise. *Id*. Absent consent, a mortgage protected by section 1322(b)(2) simply cannot be modified. *Id*. The court further observed that unlike section 1322(b)(2), section 1326(b)(1) is not so absolute. Instead, administrative expenses may be paid *first or concurrently*. *Id*. In other words, nothing in section 1326(b)(1) requires that attorneys' fees be paid first. *Id*.; *see In re Townsend*, 186 B.R. 248, 249 (Bankr. E.D. Mo. 1994) (plan cannot pay attorneys' fees ahead of and to exclusion of claim of mortgage holder); *In re Lanigan*, 101 B.R. 530, 532-33 (Bankr. N.D. Ill. 1986) (section 1326(b)(1) does not require payment in full of attorneys' fees before payment to other creditors; rather, attorneys should share in risk of plan failure); *In re Collins*, 2007 WL 2116416, at *12 (Bankr. E. D. Tenn. July 19, 2007) (plan proposing to defer payment to residential mortgage holder until all attorneys' fees paid violated section 1322(b)(2) and finding that section 1326(b)(1) does not require payment of administrative expenses ahead of other claims). Because the trustee would not have sufficient funds on hand to pay the ongoing monthly mortgage payment if the attorney's fees were paid in full upon confirmation, the *Rogers* court found that the creditor's protected mortgage would be impermissibly modified. *Id.* at 545; *see Perez v. Peake*, 373 B.R. 468, 491 (S.D. Tex. 2007) (rejecting argument that attorneys' fees must be satisfied prior to ongoing monthly mortgage payments).[7]

Similarly, in *Beall*, the court held that postponing monthly mortgage payments otherwise due under the mortgage constitutes an impermissible modification contrary to section 1322(b)(2)

---

[7]    The *Rogers* court also noted any additional fees later awarded to a debtor's attorney could cause a further delay in the creditor's receipt of its protected monthly mortgage payment. *In re Rogers*, 500 B.R. at 545.

and well-settled law. *In re Beall*, No. 13-09232, slip op. at p. 2 (citing *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 331-32 (1993)). Judge Dales summarized the interplay as follows:

> If strict compliance with § 1326(b)(1) prevents a trustee from making regular mortgage payments under a plan to a creditor protected under § 1322(b)(2), the plan does not comply with §§ 1322(b)(2) and 1322(b)(5). If a plan does not comply with the provision of chapter 13, the court cannot confirm it under § 1325(a)(1). In effect, chapter 13 protects equally the holder of an allowed administrative claim and the holder of a non-modifiable mortgage claim, and a plan that does not protect the interests of both cannot be confirmed over the objection of either.

*Id.*

The court, to some extent, diverged from *Rogers* when it noted that section 1322(b)(2) does not "trump" section 1326(b)(1), but rather each section performs its respective role. *Id.* at p. 3. The court concluded that although an attorney could insist on full satisfaction of his or her administrative expense, any such a demand would preclude confirmation of the debtor's plan absent consent of the residential mortgage holder. *Id.*[8]

Regardless of whether section 1322(b)(2) "trumps" section 1326(b)(1) or both sections must be satisfied, the outcome is the same – a plan cannot be confirmed where the holder of a protected mortgage does not consent to a delay in post-confirmation payments that a debtor would otherwise be required to maintain. Here, like in *Rogers*, the Mortgagee holds a mortgage on the debtor's principal residence that is protected by the anti-modification provision in section 1322(b)(2). *See In re Rogers*, 500 B.R. at 546 (citing *Nobleman*, 508 U.S. at 331-32). According to Ms. Nedzlek, the Trustee would not have sufficient funds on hand at confirmation to allow for compliance with both section 1322(b)(2) and section 1326(b)(1). The Mortgagee has not

---

[8]     The court in *Beall* also warned that such demand might necessitate a finding of little or no benefit to the debtor, thus requiring a reduction or even denial of fees and expenses under section 330(a). *Id.*; *see In re Rogers*, 500 B.R. at 543-44 (court would review fee application, perhaps on its own initiative, at appropriate time to ensure that services in connection with confirmation were both beneficial and necessary to debtor).

consented to disparate treatment, and the Debtor is unable to maintain its obligations to the Mortgagee by making timely post-petition payments in accordance with the terms of the mortgage. Therefore, the Plan cannot be confirmed as proposed.

The Debtor attempts to persuade this court that *Rogers* and *Beall* were incorrectly decided by relying on numerous decisions from other courts. None of these decisions are on point. Rather, they are all distinguishable or inapposite.

In his brief, the Debtor places a great deal of emphasis on *Harris*, a decision from the Bankruptcy Court for the Eastern District of Michigan. *See In re Harris*, 304 B.R. 751 (Bankr. E.D. Mich. 2004). As the Debtor correctly notes, the court in *Harris* concluded that a Chapter 13 plan could be confirmed, notwithstanding the fact that it proposed the payment of a secured creditor's claim only after payment of the fees and expenses of a debtor's attorney. *Id.* at 758. The *Harris* court stated that section 1326(b)(1) did not require or allow a delay with respect to full payment of the attorney's fees unless the debtor's attorney agreed to such a delay. *Id.* at 758. There is a glaring difference between *Harris* and this case though. As stressed in *Rogers* and recognized in *Beall*, the decision in *Harris* involved a secured creditor with a security interest in a vehicle. As such, the anti-modification provision in section 1322(b)(2) was not at issue in *Harris*.

The remaining decisions cited by the Debtor, including those which purportedly permit a cure of a post-petition, preconfirmation default[9], do not compel a different result from *Rogers* and

---

[9]  At the evidentiary hearing, the Debtor asserted that *Nobelman* did not discuss timeliness of payments. However, in *Nobleman* the Supreme Court noted that a mortgagee's rights under the mortgage are limited by section 1322(b)(5), which "permits the debtor to cure *prepetition* defaults on a home mortgage by paying off arrearages over the life of the plan 'notwithstanding' the exception in [section] 1322(b)(2)." *Id.* at 330 (emphasis added). Although this statement in *Nobleman* is dicta, the Sixth Circuit has instructed lower courts to strongly consider such statements absent a substantial reason for disregarding them. *See Ellmann v. Baker (In re Baker)*, --- F.3d ---, 2015 WL 4033098, at *4 (6th Cir. July 2, 2015) (citing *Am. Civil Liberties Union v. McCreary Cnty.*, 607 F.3d 439, 447-48 (6th Cir. 2010) (citation omitted)). Regardless of whether this is the type of dicta the Sixth Circuit had in mind, maintenance under section 1322(b)(5) requires satisfaction of obligations arising under a mortgage after the petition date. *See, e.g., In re Boday*, 397 B.R. 846, 850 (Bankr. N.D. Ohio 2008). To construe otherwise would render the requirement of maintenance superfluous.

*Beall*.  *See Mendoza v. Temple-Inland Mortg. Corp. (In re Mendoza)*, 111 F.3d 1264 (5th Cir. 1997) (court considered post-confirmation modification under section 1329 but did not consider priority of administrative expenses under section 1326(b)(1) in relation to section 1322(b)(2)); *Green Tree Acceptance, Inc. v. Hoggle (In re Hoggle)*, 12 F.3d 1008 (11th Cir. 1994) (same); *Di Pierro v. Taddeo (In re Taddeo)*, 685 F.2d 24 (2d Cir. 1982) (debtors proposed to cure mortgage defaults, not to prioritize payments to attorneys at the expense of mortgage holders); *In re Neely*, No. 96-41194, slip op. (Bankr. E.D. Mich. Sept. 10, 1996) (debtor proposed to continue regular monthly mortgage payments without implicating issue of whether administrative expenses should be prioritized over requisite payments under section 1322(b)(2)); *In re Solarz*, No. 00-41727, slip op. (Bankr. E.D. Mich. July 20, 2000) (same).[10]  As noted by the *Townsend* court, "[t]he opportunity to cure a default is a shield by which a debtor can heal a delinquent debt.  It is not a sword which the debtor can use to further delay payment. . ." *In re Townsend*, 186 B.R. at 249.

In sum, the Debtor has not presented any reason for this court to deviate from *Rogers* and *Beall*.  Those decisions continue to strike the appropriate balance between the administrative expense priority granted to the fees and expenses of a debtor's attorney and the non-modifiable nature of a residential mortgage claim.  In many cases, there may be sufficient funds on hand at confirmation to satisfy both obligations, in which case the conflict between the two statutes will not arise and the proposed plan will be confirmable.  This is not such a case, unfortunately.  Rather, as the Trustee notes in her brief, perhaps with some irony, the proposed Plan arguably harms the

---

[10]    The Debtor also attached a transcript of a bench opinion to his brief.  *See In re Nichols*, No. 07-62839, bench op. (Bankr. E.D. Mich. May 22, 2008).  This court gives little precedential value to bench opinions out of respect for the issuing court.  In such a situation, a court is typically attempting to expeditiously resolve an issue before it and has elected judicial economy and efficiency for the benefit of the parties.  Often, a bench opinion will not provide a court with an opportunity to fully explain its decision.  In light of these circumstances, this court declines to consider *Nichols*.

Debtor by attempting to prioritize the fees and expenses of Debtor's counsel over the ongoing obligations to the Mortgagee. (Trustee Br. at p. 9.)

It is undisputed that there are insufficient funds on hand with the Trustee to satisfy in full both the fees and expenses of Debtor's counsel, as well as the monthly mortgage payments due to the Mortgagee. Consequently, the Plan, as proposed, would result in an impermissible modification of the mortgage under section 1322(b)(2) and thus cannot be confirmed.

### CONCLUSION

As noted in *Rogers* and *Beall*, this court recognizes and is concerned by the hardship imposed on attorneys in certain cases where they must await payment of fees and expenses for extended periods of time.[11] However, this court's concerns cannot override the anti-modification provision contained in section 1322(b)(2). For the foregoing reasons, the court shall deny confirmation of the Plan without prejudice. The court shall enter a separate order consistent with this Opinion.

---

[11] This may not be one of those cases. The Trustee reported that according to her calculations, at least $500.00 would be available upon confirmation to distribute to Debtor's counsel. (Hr'g Tr. June 2, 2015 at p. 43.) Although Debtor's counsel would then need to await payment of the remainder of his fees and expenses, Ms. Nedzlek admitted that $341.62 would be available each month after payment to the Mortgagee and to the Trustee for her commission in order to satisfy the administrative expenses of Debtor's counsel. (Hr'g Tr. June 2, 2015 at p. 18.)

**Signed: July 21, 2015**





John T. Gregg
United States Bankruptcy Judge